IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>COEUR D'ALENE TRIBE,<br>STATE OF IDAHO,<br><br>        Plaintiffs,<br><br>        v.<br><br>HECLA LIMITED, a Delaware Corporation,<br><br>        Defendant.<br><br>and CONSOLIDATED CASES. | No. 96-0122-N-EJL<br>No. 91-0342-N-EJL<br>No. 94-0206-N-HLR<br><br>ORDER |

There are two pending motions before the Court: an unopposed motion by plaintiffs for entry of consent decree and a motion to establish a court registry to handle the settlement monies. The Court held an hearing on the motion to enter the consent decree on September 8, 2011. The Court granted the motion to enter the Consent Decree

1

is open court and indicated it would also enter a written order.

**1. Lift Stay**

After the liability phase of the consolidate CERCLA actions was concluded in 2003, Asarco filed for bankruptcy and the matter was stayed as to all parties in October of 2005. Subsequently, Asarco entered into a global settlement of all its CERCLA claims including the Coeur d'Alene Basin claims, and the claims against Asarco were dismissed as a result of the settlement in September of 2010. At that time, the parties requested the matter remain stayed to allow Hecla and the Plaintiffs to continue their settlement negotiations. The Court granted that request. The parties then requested the court appoint a mediator as the parties were unable on their own to reach a settlement. The Court appointed an experienced retired Judge, Richard Dana, to handle the settlement negotiations. After months of negotiations, which the Court was not a party to, the parties were able to enter a very detailed Consent Decree that was lodged with the Court in June of 2011. Accordingly, the Court now lifts the stay to rule upon the pending motions in this matter.

**2. Background and No Further Public Comments**

To give a little background and to address the Court's position on further public comments, the record should show the Tribe filed the first CERCLA action in 1991 and it was consolidated when the United States filed its CERCLA Complaint in 1996 seeking

recovery for clean up costs from certain mining companies who had owned, operated, generated or transported hazardous waste in the Coeur d'Alene Basin since the 1800s. It took years for the litigation to reach trial on Phase 1, liability. Some of the named Defendants settled after the liability trial began. Two Defendants, Asarco and Hecla, continued with the trial regarding liability which was hotly contested. In the Court's Order on liability in 2003, the Court noted this case is "unique in its size, its history and its complexity." The Court has been on the bench for almost 50 years and has handled many complex cases, this case however, is certainly the most complex case the Court has ever had the privilege of presiding over. After 78 days of trial, 100 witnesses, 8,695 exhibits and 16,000 pages of trial transcript, this Court determined Asarco and Hecla were liable under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), the Clean Water Act ("CWA") and Resource Conservation and Recovery Act ("RCRA") for a majority (combined 53%) of the natural resource damage in the Basin. The second phase of the trial was to be set to determine the amount of damages.

    The United States indicates in its motion to enter the Consent Decree that settlement negotiations with Hecla began in 2006, intensified in 2008 and led to the parties requesting a court appointed mediator in 2010. The Court indicated that the mediation was going to be the final attempt at settlement as the Court was prepared to move forward on the second phase of the trial in order to provide a resolution to this

litigation. The Court acknowledges that any resolution at the trial court level does not equate to a final resolution as each party has the right to seek appellate review and this review could take years. Whether or not this Court's rulings would be upheld on appeal is a question no one can answer.

Now the Court has had the opportunity to review the Consent Decree, the public comments and the record in this matter. The Court has determined that the public has had an adequate opportunity to be heard regarding the entry of the Consent Decree when the notice seeking public comments was published in the Federal Register providing for written comments to be filed within thirty (30) days. A public hearing was held on August 1, 2011. The Court acknowledges that it also received two letters from Ms. Barbara Miller regarding the Consent Decree which the Court reviewed and provided to counsel for the parties. The Court notes Ms. Miller testified at the public hearing and her interests were also represented by the written comments filed by Robert McCarl, Ph. D.

The District of Idaho's Local Rules prohibit ex parte communication with the Court. All matters to be called to a judge's attention should be formally submitted as set forth by the Court in the public comment periods provided. Because Ms. Miller is not a party to this action and had at least two opportunities to present her comments, the Court finds Ms. Miller's request for further public testimony by Ms. Miller or other members of the public on the Consent Decree will not be granted by the Court. The Court finds the comment period provided adequate due process for public comments and good cause has

not been shown to extend the comment period.

**3. Consent Decree Motion - Arguments by Counsel**

The Court notes the motion for entry of the Consent Decree is unopposed. All Plaintiffs (the United States, the Coeur d'Alene Tribe and the State of Idaho) agree the Consent Decree should be entered. Hecla's Response to the motion which included a statement by Phillips Baker, the CEO of Hecla Mining Company, also indicates Hecla concurs that the Consent Decree should be entered.

This Court, while not privy to the confidential information exchanged during the settlement negotiations, must make its own findings regarding the Consent Decree based on the record before the Court, the expert declarations, the public comments and the representations of counsel for the parties. This Court can only grant the motion to enter the Consent Decree if the Court finds the Consent Decree is fair, reasonable, and consistent with CERCLA. *United States v. Aerojet General Corp.*, 606 F.3d 1142, 1152 (9th Cir. 2010). The Court heard oral argument from the parties on the pending motion to enter the Consent Decree.

**4. The Court's Findings**

As noted earlier, the Court not only presided over the liability portion of the CERCLA litigation but the Court has had the briefing of counsel, the proposed Consent Decree, and the assistance of the Court's staff attorney to go over the voluminous record in this case. The Court finds the arguments of counsel, while helpful, have not created

any new issues and the Court is prepared to rule on the motion to enter the Consent Decree.

While this CERCLA case has dragged on for 15 years (and the Box case for 20 years), the Court feels that time is of the essence in reviewing the Consent Decree. We are talking about a lot of money. The Basin is a pristine area that needs to be preserved and there are health issues that need to be addressed by the parties. However, it is this Court's judgment that the litigation needs stop and additional clean up and restoration efforts need to move forward.

**A. Ability to Pay Settlements Allowed**

As indicated by this Court previously, CERCLA is not a model of clarity, but the statute passed by Congress does provide for "ability to pay" settlements. The Court acknowledges this concept of an "ability to pay" settlement is unusual in that a party is not being asked to pay the total cost of their share of the harm. While this Court has previously found Hecla 31% liable for the harm in the Basin from the release of mine tailings, Congress and the courts have acknowledged that it is not always possible for a defendant to actually pay the full amount of their liability. Therefore, CERCLA allows for settlements to be reached based on the ability of a party to pay instead of the full extent of the damages that may be determined or calculated by the Court had the matter gone to trial.

It makes no sense to the Court to put a company out of business completely and

receive little or no payment on that party's liability. Rather, in this case, the ability to pay settlement has been evaluated by many experts and found to be reasonable based upon the financials of Hecla, its future operating plans and the volatility of the mineral markets. As often said, a bird in the hand is better than two in the bush and while some want to speculate about Hecla's ability to pay, the Plaintiffs (who represent the interests of the public) have represented this ability pay settlement is both fair and reasonable.

Further, Hecla has agreed in the Consent Decree to provide guarantees from outside financial institutions should Hecla not have the ability to pay in the future.

**B.     Arms Length Negotiations**

Counsel for the parties have represented that the settlement was reached after good faith negotiations by all involved. The negotiations were hard fought and each side had strong legal arguments that could have impacted the final outcome in this case. The litigation of the damages as well as the Court's prior ruling on liability would be protracted and expensive and in all likelihood would be appealed.

Both sides appear to have compromised. The mediator is a retired judge experienced in evaluating the likelihood of success of each of the parties. As noted by Mr. Baker, this is the largest ability to pay settlement by the United States outside of the context of bankruptcy. The Consent Decree resolves Hecla's liability for the Box and the Basin. The Consent Decree resolves three separate lawsuits in federal court that began in 1991. It eliminates the significant costs and risks of litigation. It provides certainty in

that approximately $167 million is paid within 30 days by Hecla and the balance of approximately $96.4 million will be paid over the next three years for continued clean up and restoration efforts in the Box and Basin. It holds as a responsible party one of the few mining companies still in business in Northern Idaho while some other mining companies who contributed to the harm will never have to pay for damages they caused. For these reasons, the Court finds the Consent Decree was reached by experienced and fully-informed counsel, sophisticated and voluntary parties who each gave up something for the sake of a final fair and reasonable settlement consistent with CERCLA, the Clean Water Act and the Resource Conservation and Recovery Act.

### C. Public Comments

Twenty-eight (28) written public comments were received and public testimony was received from approximately twenty persons. This low number of public comments appears to indicate that the public is generally in support of the settlement as the history of the lawsuits is well-known to the northern Idaho residents. The Court will group the comments into three areas: those in favor, those who want the monies spent on specific programs and the Spokane Riverkeepers' objections to the ability to pay analysis.

#### 1) In Favor

Of the 28 written public comments, 11 were from people that simply wrote to show their support of the Consent Decree. Many of these persons were local government representatives who are familiar with the toll this litigation and the clean up efforts have

had and continue to have on their communities. The Idaho Mining Association also supports the entry of the Consent Decree as being in the public interest. Many who wrote comments generally support the settlement, but wish to articulate specific concerns about how the settlement funds should be allocated.

          2) <u>How to Spend the Settlement Funds</u>

Many of the public comments seek to encourage the Court to order how the settlement funds should be used such as for a health clinic for lead exposure testing and treatment. Other comments recommend other specific remediation projects for the settlement monies to be directed towards. While it is well-documented that lead exposure has had a significant impact on people and animals, the issue before this Court is not to determine how the settlement monies will be spent, but whether the proposed settlement is fair and reasonable.

The Basin is one of the largest, if not the largest, Superfund site in the nation comprised of over 1500 square miles of territory. Many steps have been taken to reduce and remove mine tailings and lead exposure to the residents and wildlife living in the Basin. It is undisputed that even more clean up, restoration and protection of human health needs to occur. However, it is the Environmental Protection Agency ("EPA"), the State of Idaho and the Tribe, not this Court, who are charged with managing the implementation of clean up, restoration and protection of the public's health. While the Court will direct the attorney for the United States to provide a copy of the written

comments and public hearing transcript to the EPA, it is the EPA, the State of Idaho and the Tribe, not the Court, which will have the final say on how the settlement monies are spent.

The Court also acknowledges, as many of the members of the public have also stated, that the costs of cleaning up the Basin will exceed the amount of funds the EPA has available from settlements and/or Congress to spend on the Basin. The Court is confident that the public will continue to have input into the prioritization of the expenditures, but not all requests for clean up, restoration, public health clinics can be funded or completed. Like our school budgets, personal family budgets and business budgets, there are more worthwhile program ideas than can be adequately funded and it will be up to the EPA, the State of Idaho and the Tribe, with public input, to determine the priority of projects with due consideration of the statutory limitations that may exist on how the allocated monies can be spent. These public concerns, while valid, are not a proper basis for denying the motion to enter the proposed Consent Decree.

### 3) Spokane Riverkeepers' Ability to Pay Challenge

The primary focus of these two written comments by the Spokane Riverkeepers is that the ability to pay settlement does not seem fair or reasonable in light of the fact that Hecla was determined to be 31% liable and is paying $263.4 million while Asarco who was determined to be 22% liable agreed to pay approximately $500 million to the United States and Tribe.

This simple comparison of dollars and percentages is not the only test in determining whether this Consent Decree is fair and reasonable. Asarco is a much larger company than Hecla; Asarco negotiated a global settlement in the bankruptcy court for all of its alleged CERCLA liabilities, not just the Basin liability. Asarco's ability to pay is different than Hecla's ability to pay. (Just because a company has filed for bankruptcy does not mean a company which is reorganizing cannot pay more that a smaller company that continues in business.)

This Court granted a protective order in order to allow the negotiators for the Plaintiffs to review confidential information about Hecla's finances and operations. While some financial information regarding Hecla is available publicly, much is not available to the public and a party should not have to make available to the public confidential information as a condition of having a settlement approved. Experts for the opposing parties were allowed to evaluate in detail the company's confidential information and determine if the settlement was a fair and reasonable "ability to pay" settlement in light of the volatile mineral market in which Hecla competes.

The experts that reviewed the confidential information and advised the Plaintiffs were an accountant, a mining engineer, two economists/management consultants, the Regional Administrator of Region 10 of the EPA, the Deputy Regional Forester, the Department of Interior's Natural Resource Damage Assessment Case Manager for the Basin, the Director of the Tribe's Lake Management Department, and the Deputy

Director of the Idaho Department of Environmental Quality. These experts are certainly qualified to determine that the proposed Consent Decree is a fair and reasonable ability to pay settlement when considering the issues raised by the Spokane Riverkeepers as well as the other competing interests and the fact that the total clean up of the Basin will likely exceed two billion dollars.

This Court was not a party to the negotiations, but finds the record supports that the Plaintiffs entered the Consent Decree after carefully studying and determining (with the assistance of many financial and CERCLA experts) Hecla's ability to pay. There is no crystal ball indicating that Hecla will be less or more profitable than the experts can currently determine, but at this time the experts, with the all the information before them, have all concurred this settlement is a fair and reasonable settlement consistent with CERCLA in light of Hecla's ability to pay. The Court must give deference to the Plaintiffs' determination regarding Hecla's ability to pay. *United States v. Montrose Chemical Co.*, 50 F.3d 741, 746 (9th Cir. 2010).

The Court finds the public comments received in this case provide no basis to deny the motion to approve and enter the Consent Decree. The Court adopts the written response to objections to the Consent Decree filed by the United States as its own response to the objections in addition to the analysis set forth in this Order.

   **4. Conclusion**

CERCLA was enacted to provide a framework for cleanup of the nation's worst

hazardous waste sites. The mine tailings that impacted the residents and environment of the Coeur d'Alene Basin happened over decades of mining beginning in the 1800s. The minerals and metals mined helped in the industrialization of this country and in defending this country in times of war. Much was unknown about the long-term effects of the mine tailings when they were deposited into the waterways and onto the soil of the Basin. Many parties have been found to be responsible and have agreed to pay significant monies. Hecla has now agreed to pay $263.4 million plus interest in addition to monies it has paid for other settlements and clean up efforts. The parties acknowledge that Hecla continues to be a positive economic influence in Northern Idaho.

The primary goal of CERCLA is to protect and preserve public health and the environment from the effect of releases of hazardous substances. *See* 42 U.S.C. § 9601(24). While the Basin may never be fully restored, many people believe the Superfund clean up efforts have made the Basin a case study for what can be done with the federal government, the state, the Tribe and the public working together to preserve public health and to clean up and restore the environment for wildlife, birds and fish. Moreover, Mother Nature has done her part in helping the environment to heal on its own.

It is with serious consideration of the entire the record in this matter over the past 20 years and with due consideration for the public comments received on the Consent Decree, the Court finds the Consent Decree is fair and reasonable and consistent with

CERCLA, the Clean Water Act and Resource Conservation and Recovery Act as well as in the public's interest. Therefore, the Court will grant the motion for entry of the Consent Decree in the three consolidated cases.

**Order:**

Being fully advised in the premises, the Court hereby orders:

1) the stay in this case is LIFTED;

2) the Plaintiffs' unopposed motion to enter the Consent Decree (Dkt. No. 1611) is GRANTED and the Court will enter a separate written order accomplishing the same;

3) the United States' motion to deposit certain funds into the Registry of the Court (Dkt. No. 1608) is GRANTED; and

4) all pending motions filed prior to Asarco filing for bankruptcy protection (Dkt. Nos. 1466, 1483, 1486, 1487, 1489, 1490, 1495, 1496, 1505, 1534, 1545, 1546, and 1554) are hereby DENIED AS MOOT based on the settlement agreements reached by Asarco and Hecla.

DATED: **September 8, 2011**

Honorable Edward J. Lodge
U. S. District Judge